IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EAST RIO HONDO WATER SUPPLY CORPORATION | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. B-09-189 |
| AMERICAN ALTERNATIVE INSURANCE CORPORATION | § § § § | |
| Defendant. | § § | |

United States District Court
Southern District of Texas
ENTERED

AUG 3 0 2010

David J. Bradley, Clerk of Court

## OPINION and ORDER

BE IT REMEMBERED, that on August 30, 2010, the Court considered Defendant American Alternative Insurance Corporation's Motion for Summary Judgment, Dkt. No. 14, and Plaintiff East Rio Hondo Water Supply Corporation's Motion for Partial Summary Judgment. Dkt. No. 16. After considering these cross motions for summary judgment, the responses and replies of the parties, and the attached exhibits, the Court grants partial summary judgment in favor of Plaintiff East Rio Hondo Water Supply Corporation for the reasons set forth below.

I.   **Background**

Plaintiff East Rio Hondo Water Supply Corporation ("East Rio Hondo") filed this action on July 07, 2009, seeking a declaration that Defendant American Alternative Insurance Corporation (AAIC), its insurer, has a duty to defend and indemnify it in a lawsuit styled *Carl & Janel Parker, plaintiffs, and Carolina S. Ruiz, intervenor, v. East Rio Hondo Water Supply Corp.*, filed in the 357th District court of Cameron County, Texas. No. 2008-08-4655-E (April 6, 2009); *see also* Dkt. No. 14 Ex. 2–3 (First Amended Petition and Petition in Intervention of Carolina S. Ruiz in underlying case). AAIC removed this case to this court on August 10, 2009, Dkt. No. 1, and the parties have filed cross motions seeking summary judgment on AAIC's duty to defend the underlying suit. Dkt. Nos. 14, 16. AAIC also asks the

1

Court to grant summary judgment and declare that it has no duty to indemnify East Rio Hondo in the underlying litigation. Dkt. No. 14 at 12–13.

A. *Underlying Litigation*

The parties agree that the First Amended Petition filed April 6, 2009 by Carl and Janell Parker First Amended Petition, and Carolina S. Ruiz's Petition in Intervention filed in the underlying case control this dispute. Dkt. No. 14 Ex. 2–3; Dkt. No. 16 Ex. B–C (identical pleadings). The facts alleged in both pleadings are variations on a common theme.

According to the underlying pleadings, East Rio Hondo, a regional water and sewage utility corporation, has been the exclusive provider of potable water to the Parker and Ruiz homes. Dkt. No. 14 Ex. 2 at 6 ¶ 15; *id.* Ex. 3 at 6 ¶ 15. In 2008, East Rio Hondo representatives allegedly demanded that the Parkers and Ruiz sign a legal document granting East Rio Hondo an easement enabling it to build an underground pipeline crossing their respective properties. Dkt. No. 14 Ex. 2 at 7; Dkt. No. 14 Ex. 3 at 7. The Parkers and Ruiz initially declined, allegedly telling the East Rio Hondo representatives that they did not understand the legal documents; they requested a diagram so that they could visualize the location of the proposed easement. Dkt. No. 14 Ex. 2 at 6–7; *id.* Ex. 3 at 6. After being furnished with the requested diagrams, the pleadings aver that the Parkers and Ruiz declined to sign East Rio Hondo's easement documents for different reasons. Dkt. No. 14 Ex. 2 at 7; *id.* Ex. 3 at 7. The Parkers were allegedly concerned that they would need to move their existing driveway while Ruiz believed that the proposed pipeline would interfere with her septic system. Dkt. No. 14 Ex. 2 at 7; *id.* Ex. 3 at 7.

On July 28, 2008, East Rio Hondo allegedly sent the Parkers and Ruiz letters threatening to discontinue water service to their homes if they did not immediately sign the easement documents. Dkt. No. 14 Ex. 2 at 7; *id.* Ex. 3 at 7. The Parkers then retained an attorney who responded to East Rio Hondo by letter, but East Rio Hondo nonetheless discontinued water service to the Parker and Ruiz homes on July 30, 2008. Dkt. No. 14 Ex. 2 at 8; *id.* Ex. 3 at 8. The Parkers' First Amended Petition describes a two-month struggle with East Rio Hondo which then ensued.

Dkt. No. 14 Ex. 2 at 8–9. Water service was temporarily restored on July 31, 2008, after the Parkers obtained a temporary restraining order, but, the First Amended Petition alleges, it was again discontinued on August 13, 2008. *See id.* at 8. In all, the Parkers allege that they were deprived of water service for a total of 11 days before the Texas Commission on Environmental Quality (TCEQ) board finally resolved the matter by ordering East Rio Hondo to restore service to the Parker and Ruiz homes. *Id.* at 10.

The First Amended Petition in Intervention of Carolina S. Ruiz also alleges that East Rio Hondo discontinued water service to her home on July 29, 2008. Dkt. No. 14 Ex. 3 at 8. Unlike the Parkers, Ruiz avers that East Rio Hondo did not return water service to her home until the TCEQ Board order, a period of 65 days. *Id. at* 8.

Both pleadings in the underlying litigation include causes of action for breach of contract, intentional infliction of emotional distress, violations of the Texas Water Code, and gross and simple negligence. *See* Dkt. No. 14 Ex. 2 at 10–13; *id.* Ex. 3 at 9–12. The Parkers and Ruiz both seek economic damages, exemplary damages, and non-economic damages including "mental or emotional pain or anguish, inconvenience, loss of enjoyment of life, and all other nonpecuniary losses." Dkt. No. 14 Ex. 2 at 14.

*B. Insurance Coverage Litigation*

On July 7, 2009, East Rio Hondo filed this lawsuit against its insurer, which removed the case to federal court. Dkt. No. 1. East Rio Hondo seeks a declaration that AAIC owes it a duty to defend and indemnify it in the Parker and Ruiz litigation. *See generally id.* The parties have filed cross motions for summary judgment. Dkt. Nos. 14, 16

The parties agree that AAIC insurance policy number SDISSP9150831-1/0 governs the coverage determination in this case. Dkt. No. 14 Ex. 1; Dkt. No. 16 Ex. A. The parties have limited their arguments to the question of whether the language of two policy provisions labeled Coverage A and coverage C give rise to a duty to defend or indemnify. Coverage A provides, in part:

   1. Insuring Agreement

   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

   2. Exclusions Applicable to Coverage A.

   This insurance does not apply to:

   a. Expected or Intended Injury
      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from reasonable actions taken to protect persons or property. . .

*Id.* at 208–09 (emphasis deleted).

Coverage C reads in relevant part as follows:

   1. Insuring Agreement

      We will pay those sums that the insured becomes legally obligated to pay as damages because of injury arising out of "special district professional activity". We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any "special district professional activity" and settle any claim or "suit" that may result.
      . . .

   3. Exclusions Applicable to Coverage C

      All exclusions under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** apply to this **COVERAGE C.**

*Id. at* 217–18 (emphasis in original).

East Rio Hondo argues that AAIC owes it a duty to defend under Coverage C because the pleadings in the underlying litigation allege an "injury arising out of

'special district professional activity'.[sic]" *See* Dkt. No. 14 Ex. 1 at 217. AAIC argues that it owes East Rio Hondo no duty to defend or indemnify case under either Coverage A or Coverage C, and, even if it does, the intentional acts exclusion in Coverage A, which is expressly incorporated by Coverage C, excludes coverage because East Rio Hondo intentionally discontinued water service to the Parker and Ruiz homes. *See* Dkt. No. 14.

## II. Standard of Review

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the Court demonstrate that no genuine issue of material fact exists, and the movant is thus entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006); *Lockett v. Wal-Mart Stores, Inc.*, 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's Seafood World, LLC*, 448 F.3d at 752 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court must view all evidence in the light most favorable to the non-moving party. *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Thus, the Court will not, "in the absence of proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (emphasis deleted) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)); *see also* TIG Ins. Co. v. Eagle, Inc., Civ. Action No. 05-0179, 2007 WL 861153, at *2 (E.D. La. Mar. 19, 2007) (quoting *Little*, 36 F.3d at 1075), *Rev'd on other grounds* 294 Fed. Appx. 920 (5th Cir. 2008).

The non-movant has no duty to respond to a motion for summary judgment until the moving party meets its burden of showing that no genuine issue of fact exists. *See Lockett*, 337 F. Supp. 2d at 891 (citing *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993)). However, if the movant satisfies its burden, the non-movant must

then come forward with specific evidence to show that there is a genuine issue of fact. *Lockett*, 337 F. Supp. 2d at 891; *see also Ashe*, 992 F.2d at 543. The non-movant may not merely rely on conclusory allegations or the pleadings. *Lockett*, 337 F. Supp. 2d at 891. Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. FED. R. CIV. P. 56(e); *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891.

"Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). Thus, once it is shown that a genuine issue of material fact does not exist, "[s]ummary judgment is appropriate . . . if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" Arbaugh v. Y&H Corp., 380 F.3d 219, 222–23 (5th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

## III. Discussion

"An insurer's duty to defend is separate from and broader than its duty to indemnify" under Texas law. Noble Energy, Inc. v. Bituminous Cas. Co., 529 F.3d 642, 646 (5th Cir. 2008) (citing Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr., 468 F.3d 857, 858 (5th Cir. 2006)). Both parties ask the Court to grant summary judgment concerning AAIC's duty to defend the underlying case. *See* Dkt. No. 14 at 4; Dkt. No. 16 at 2. AAIC also asks the Court the grant summary judgment declaring that it has no duty to indemnify East Rio Hondo because "the same reasons AAIC has no duty to defend Plaintiff in the underlying lawsuit negate any possibility that AAIC has a duty to indemnify it." Dkt. No. 14 at 12.

*A. Duty to Defend*

Under Texas law, the duty to defend "is established according to the eight-corners doctrine, considering only the factual allegations in the pleadings [in the underlying case] and the terms of the policy." D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co., Ltd., 300 S.W.3d 740, 745 (Tex. 2009) (citing Pine Oak Builders, Inc. v.

6

Great Am. Lloyds Ins. Co., 279 S.W.3d 650, 654 (Tex. 2007)); *see also, e.g.*, Willbros RPI, Inc. v. Continental Cas. Co., 601 F.3d 306, 309 (5th Cir. 2010) (citing King v. Dallas Fire Ins. Co., 85 S.W.3d 185, 187 (Tex. 2002)). An insurer has a duty to defend its insured "[i]f any allegation in the complaint is even potentially covered by the policy." Primrose Operating Co. v. Nat'l Am. Ins. Co., 382 F.3d 546, 552 (5th Cir. 2004), *quoted in Willbros RPI, Inc.*, 601 F.3d at 610; Zurich Am. Ins. Co. v. Nokia, Inc., 268 S.W.3d 487, 495–96 (Tex. 2008) ("The duty to defend is not negated by the inclusion of claims that are not covered; rather, it is triggered by the inclusion of claims that might be covered."). Indeed, an insurer has a duty to defend if the facts alleged in the underlying case do not "clearly show[] that the case is within or without coverage." Building Specialties, Inc. v. Liberty Mut. Fire Ins. Co., ___ F. Supp. 2d ___, 2010 WL 1990115, at *9 (S.D. Tex. 2010) (citing Trinity Universal Ins. Co. v. Employers Mut. Cas. Co., 592 F.3d 687, 693 (5th Cir. 2010)).

The Court finds that there is no factual dispute concerning the contents of the underlying pleadings or the insurance policies in this case. In an affidavit attached to its motion for summary judgment, AAIC's attorney avers that it has provided true and correct copies of the pleadings in the underlying litigation along with insurance policy number SDISSP 9150831-1/0 issued to East Rio Hondo and effective from January 1, 2008 to January 1, 2009. *See* Dkt. No. 14 Ex. 1 at 1. East Rio Hondo attaches identical documents to its summary judgment motion. *See* Dkt. No. 16 Ex. A–C. Moreover, the parties do not dispute, and the pleadings in the underlying case allege, that all of the events potentially giving rise to coverage took place during the coverage period. *Compare* Dkt. No. 14 Ex. 1 at 1 *with id.* Ex. 2 at 6–10; *id.* Ex. 3 at 6–9.

AAIC argues that the allegations in the underlying litigation do not give rise to coverage. *See* Dkt. No. 14 at 4. It also argues that the policy's "intentional acts" exclusion, which excludes coverage for "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured," precludes coverage in this case. Dkt. No. 14 Ex. 1 at 209. To make this coverage determination, the Court first asks whether "coverage possibly exists as alleged." Basic Energy Svcs., Inc. v.

7

Liberty Mut. Ins. Co., 655 F. Supp. 2d 666, 675 (W.D. Tex. 2009). If this question is answered in the affirmative, the Court then turns to the question of "whether any exception[s] apply." *Id.*

When making a duty-to-defend determination, the Court "focus[es] on the factual allegations which show the origin of the damages rather than on the legal theories alleged" Duncanville Diagnostic Ctr., Inc. v. Atl. Lloyd's Ins. Co. of Tex., 875 S.W.2d 788, 789 (Tex. App.–Eastland 1994). Allegations set forth in the pleadings in the underlying case must be construed liberally with all doubts resolved in favor of the insured and "without reference to their truth or falsity, to what the parties know or believe to be the true facts, or to a legal determination of the true facts." *Willbros RPI, Inc.*, 601 F.3d at 309 (citing *Duncanville Diagnostic Ctr., Inc.*, 875 S.W.2d at 789).

### 1. Coverage

Two provisions of the insurance policy bear on the coverage determination in this case. Dkt. No. 14 Ex. 1. Coverage A obliges the insurer to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage.'" *Id.* Coverage A also states, among other things, that "[t]his insurance applies to 'bodily injury' or 'property damage' only if . . . the 'bodily injury' or 'property damage' is caused by an 'occurrence' arising out of your operations that takes place in the 'coverage territory'.[sic]" *Id.* An "occurrence," in turn, is defined in Section V of the policy as "an accidental happening, including continuous or repeated exposure to the same harmful conditions." *Id.* at 228. AAIC argues that the underlying pleadings do not contain allegations of an "occurrence" as that term is defined in the insurance policy. *See* Dkt. No. 14 at 9. Instead, all of the damages in the underlying pleadings resulted from East Rio Hondo's "intentional act" according to AAIC. *See id.*

East Rio Hondo, however, does not argue that Coverage A gives rise to coverage in this case; it instead draws the Court's attention to Coverage C which does not limit coverage to an "occurrence." Coverage C begins by promising that the insurer "will pay those sums that the insured becomes legally obligated to pay as

damages because of injury arising out of 'special district professional activity'.[sic]" Dkt. No. 14 Ex. 1 at 217. The insurance policy's definitions section again elaborates: "'Special district professional activity' means an act, error or omission which arises from your activities as a water or wastewater district, water utility or any other entity whose primary duty is the treatment and distribution of 'potable water', or the collection and treatment of wastewater." *Id.* at 230.

The pleadings in the underlying litigation allege that East Rio Hondo "is a nonprofit water supply corporation . . . [which] serves as a water utility providing retail service to residential and commercial customers." Dkt. No. 14 Ex. 2 at 4 ¶ 8. They also assert that East Rio Hondo possesses a state-granted monopoly on the provision of potable water to the plaintiffs in the underlying case. *See ibid.* ¶ 9. Finally, the plaintiffs and intervener in the underlying case also allege that East Rio Hondo discontinued their water service in violation of their contractual and legal rights and that they suffered damages as a result. *See* Dkt. No. 14 Ex. 2 at 8 ¶¶ 22–23; *id.* Ex. 3 at 10 ¶ 28 ("East Rio Hondo had already inflicted significant damages and injuries upon plaintiffs through its acts of willfully interrupting their water utility service"). Both pleadings specifically accuse East Rio Hondo of sending a letter to the third-party plaintiffs on July 28, 2008, informing them that their water service would be discontinued unless they agreed to convey an easement to East Rio Hondo. *Ibid.* As the foregoing illustrates, the pleadings in the underlying case allege an injury because of East Rio Hondo's "activities as a water or wastewater district [or] water utility." Dkt. No. 14 Ex. 1 at 217, 230.

Thus, unless an exclusion provision of the insurance policy operates to negate coverage, the Court holds that the allegations in the underlying litigation fall within the ambit of Coverage C of policy number SDISSP 9150831-1/0. *Id.* at 197. Having reached this conclusion, the Court has no occasion to address whether the language of Coverage A also gives rise to coverage.

### 2. Exclusion

AAIC devotes the majority of its summary judgment briefing to its argument that the intentional acts exclusion found in Coverage A of the insurance policy precludes coverage in this case. *See* Dkt. No. 14 at 7–10. Coverage C expressly provides that "All exclusions under COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY apply to this COVERAGE C." *Id.* Ex. 1 at 218 (emphasis deleted). Paragraph 2(a) of Coverage A reads in part "[t]his insurance does not apply to . . . 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured." *Id.* at 208–09. East Rio Hondo first asserts that this exclusion only applies when Coverage A rather than Coverage C gives rise to coverage of the underlying case. Dkt. No. 16 at 4–5. Alternatively, it also argues that the pleadings in the underlying case make allegations potentially not covered by the intentional acts exclusion.

#### a. Relationship Between Coverage A and Coverage C

East Rio Hondo argues that *Westchester Fire Insurance Co. v. Admiral Insurance Co.*, 152 S.W.3d 171 (Tex. Ct. App. 2004) (en banc), precludes the application of the intentional acts exclusion found in Coverage A because Coverage C gives rise to coverage. In the underlying case in *Westchester Fire*, a patient and her daughter brought negligence, fraud, and statutory claims against a nursing home based on its care of that patient over a five-month period. *See id.* at 176. The insurance policy construed by the court contained a CGL provision limiting coverage to an "occurrence" and a separate professional liability coverage provision not limited to an occurrence. *Id.* at 181. The policy defined an occurrence as "an accident . . . which results in bodily injury . . . neither expected nor intended from the standpoint of the Insured," and the insurer argued that this language barred coverage of the underlying case. *Id.* (alterations in original). The *Westchester Fire* court rejected this argument because the allegations in the underlying case triggered coverage under the professional services coverage provision which was not limited to an occurrence. *See id.* at 181–82. The court distinguished *St. Paul Fire & Marine Insurance Co. v. Convalescent Services., Inc.*, 193 F.3d 340, 343 (5th Cir.

1999), a case involving the application of a punitive damages exclusion to similar facts, by observing that "the primary policy in *St. Paul* specifically excluded coverage for punitive damages, and the federal court explicitly relied on this exclusion . . . " *Id.* at 181. Thus, W*estchester Fire* and *St. Paul* read together stand for the proposition that when a professional services coverage provision specifically excludes coverage, that exclusion must be applied, but, if a professional services coverage provision is silent concerning an exclusion found in a CGL coverage provision, that exclusion will not bar coverage. *See id.*

Coverage C expressly incorporates the intentional acts exclusion along with all of the Coverage A exclusions. *Id.* at 218 ("All exclusions under COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY apply to this COVERAGE C."). Applying the intentional acts exclusion in this case therefore comports with the rule laid out in *Westchester Fire* and *St. Paul*. *See* 152 S.W.3d at 181–82; *St. Paul*, 193 F.3d at 343. To hold otherwise would do violence to the policy's plain language. When interpreting an insurance contract under Texas law, a court "must read all parts of the contract together, giving effect to each word, clause, and sentence and avoid making any provision in the policy inoperative." State Farm Lloyds v. Page, No. 08-0799, ___ S.W.3d ___, 2010 WL 2331460, at *2 (Tex. June 11, 2010) (citing State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433 (Tex. 1995)) (other citations omitted). Reading *Westchester Fire* as limiting coverage in this case would require the Court to render Coverage C's language expressly incorporating Coverage A's exclusions inoperative, a result incompatible with Texas law. *See id.*

East Rio Hondo asserts that reading the intentional acts exclusion of Coverage A as applicable to Coverage C will transform Coverage C into surplussage. *See* Dkt. No. 20 at 7. The Court cannot agree. While the insurer promises to cover only "bodily injury" and "property damage" in Coverage A, Dkt. No. 14 Ex. 1 at 208, it makes a broader commitment in Coverage C to cover damages "because of injury arising out of 'special district professional activity'.[sic]" *Id.* at 217. The intentional acts exclusion does not constrict the "injury" that is the subject of Coverage C to

11

only those injuries encompassed by Coverage A; instead, it excludes certain "bodily injury" and "property damage," which is only a subset of all "injury because of 'special district professional activity'.[sic]" *See id.* at 209; *see also* Trinity Universal Ins. Co v. Cowan 945 S.W.2d 819 (1997); Universal Underwriters Ins. Co. v. New Braunfels Trans, Inc., No. 03-0500643-CV, 2006 WL 2707003, at *1 (Tex. Ct. App. Sept. 20, 2004) (quoting an insurance policy defining "injury" as including covered categories contrasted with "bodily injury" or "property damage" such as "'mental anguish,' 'humiliation,' 'false imprisonment,' and 'libel'").

### b. Intentional Acts Exclusion

The intentional acts exclusion found in Coverage A of the insurance contract in this case reads: "This insurance does not apply to . . . 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured." Dkt. No. 14 Ex. 1 at 209. AAIC suggests that the petitioners' and intervener's pleadings in the underlying case allege that East Rio Hondo intentionally discontinued the third-party plaintiffs' water service with a design to producing the harm of which the third-party plaintiffs complain, and this exclusion consequently precludes coverage. *See* Dkt. No. 14 at 9. East Rio Hondo points to the gross negligence allegations found in both underlying pleadings, which aver that East Rio Hondo "nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs" as providing a basis for coverage notwithstanding the intentional acts exclusion. *See* Dkt. No. 14 at 12.

Neither party addresses the fact that the exclusion applies only to "'bodily injury' or 'property damage'.[sic]" Dkt. No. 14 Ex. 1 at 209. The Court cannot presume that, if coverage is triggered under the broader professional service provision in Coverage C, the intentional acts exclusion negates coverage of all injuries "expected or intended from the standpoint of the insured" even if that injuries does not fit into the "bodily injury" or "property damage" categories. *See Page*, ___ S.W.3d ___, 2010 WL 2331460, at *2 (preferring construction of insurance contract which "gives effect to every . . . word [and] phrase"); *see also* Zurich Am. Ins. Co. v. Nokia, Inc., 268 S.W.3d 487, 501 (Tex. 2008) (rejecting

12

application of exclusions to allegations because exclusions text limited them to "property damage" and court found that underlying pleadings also alleged harm arising out of "bodily injury"). In order for this exclusion to negate the duty to defend, then, all of the damages alleged in the underlying pleadings must arise "because of . . . 'bodily injury' or 'property damage'," and an allegation of another form of cognizable injury will lead to coverage. *See* Nokia, Inc., 268 S.W.3d at 501.

The insurance policy defines "bodily injury" and "property damage" as follows:

> 4. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
> . . .
> 22. "Property damage" means:
>    a. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>    b. loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Dkt. No. 14 Ex. 1 at 226–27.

Relying on a definition of "bodily injury" which is more expansive than the one in this policy, the Texas Supreme Court held in *Trinity Universal Insurance Co. v. Cowan* that "absent an allegation of a physical manifestation of mental anguish, a claim of mental anguish is not a 'bodily injury' for purposes of invoking the duty to defend." 945 S.W.2d 819, 820, 822 (1997). In *Cowan*, the underlying third-party plaintiff alleged that she had suffered and would continue to suffer "severe mental pain, a loss of privacy, humiliation, embarrassment, fear, frustration, [and] mental anguish" as a result of having compromising photographs circulated to friends by a clerk whose task it was to develop those photos. *Id.* at 821. The *Cowan* court explained that its holding comported with the common understanding of the word "bodily" which "implies a physical, and not purely mental, emotional, or spiritual harm." *Id.* at 823 (citations omitted). The *Cowan* court then went on to hold that

physical manifestations of mental anguish may not, as a matter of law, be inferred from an allegation of mental anguish when making a coverage determination. *See id.* at 824.

In light of *Cowan*, the Court examines the pleadings to determine if, liberally construed in favor of the insured, they potentially allege some pure mental anguish without a physical manifestation. *See ibid.; Nokia, Inc.*, 268 S.W.3d at 495–96 (explaining that coverage is triggered by inclusion of a claim that "may be covered"). Both the First Amended Petition and the First Amended Petition in Intervention in the underlying litigation make numerous allegations of mental anguish. *See, e.g.*, Dkt. No. 1 Ex. 2 at 3. The plaintiffs and intervener include a cause of action for intentional infliction of emotional distress, alleging that "East Rio Hondo intentionally inflicted distress" upon them. *Id.* Ex. 2 at 12; *id.* Ex. 3 at 11. To cite another example, Carolina Ruiz's First Amended Petition in Intervention expressly alleges that East Rio Hondo's discontinuation of water service for 65 days "caused [the intervener] to suffer extreme mental anguish and distress," but is silent concerning any physical manifestation of this distress. Dkt. No. 14 Ex. 3 at 8; *see also id.* at 9 (accusing East Rio Hondo of fabricating reason to terminate water as "a ruse to further inflict emotional distress and damages").

The Court can find only one allegation which might amount to a physical manifestation of mental anguish in the pleadings. Both underlying pleadings request in their prayers for relief economic damages, exemplary damages, and "[n]on-economic damages including damages awarded for the purpose of compensating [the third-party plaintiffs], for physical pain and suffering, mental or emotional pain or anguish, inconvenience, loss of enjoyment of life, and all other nonpecuniary losses." Dkt. No. 14 Ex. 2 at 14; *id.* Ex. 3 at 13. These allegations raise some doubt about the relationship between the physical pain and mental anguish allegedly suffered. It is possible that all of the physical pain damages pleaded by the underlying plaintiffs are manifestations of their mental anguish, but it is also possible that at least some of the physical pain resulted from the underlying plaintiffs and intervener going without water service. *See, e.g.*, Dkt. No.

14 Ex. 3 at 9 (alleging that East Rio Hondo engaged in ruse to inflict mental anguish and other damages which may include physical pain).

In *Gehan Homes, Ltd. v. Employers Mutual Casualty Co.*, a Texas court performed a duty-to-defend analysis on an underlying pleading containing bare allegations of mental anguish and physical pain. 146 S.W.3d 833, 844 (Tex. Ct. App. 2004). Applying the *Cowan* definition of mental anguish, the court reasoned that the rule that underlying pleadings must be construed in favor of the insured in doubtful cases required it to construe the bare allegations of physical pain and mental anguish in favor of coverage. *See id.* (citing Nat'l Union Fire Ins. Co. v. Merch. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997)). As the Court has already explained, "all doubts" concerning the pleadings in the underlying case "must be resolved in favor of the insured." *Willbros RPI, Inc.*, 601 F.3d at 309 (citing *Duncanville Diagnostic Ctr., Inc.*, 875 S.W.2d at 789); *Gehan Homes*, 146 S.W.3d at 844.

Accordingly, the Court finds that the underlying plaintiffs and intervener potentially seek damages for mental anguish without physical manifestation. Thus, the underlying pleadings potentially allege at least one covered pure mental anguish claim which is not cognizable as "bodily injury" under *Cowan*. 945 S.W.2d at 821. Consequently, because the intentional acts exclusion applies only to "bodily injury" and "property damage" as the insurance policy defines those terms, it does not negate coverage of these potential mental anguish allegations. The inclusion of even one potentially covered claim triggers the duty to defend. *See Willbros RPI, Inc.*, 601 F.3d at 610; *Nokia, Inc.*, 268 S.W.3d at 495–96. Therefore, the Court holds that Defendant has a duty to defend Plaintiff against the claims alleged in the First Amended Petition and First Amended Petition in Intervention in the underlying case. *See Nokia, Inc.*, 268 S.W.3d at 495 (quoting a leading insurance treatise for the proposition that an insurer has the duty to defend an entire suit "at least until it can limit the suit to those claims outside of the policy coverage"). As a result, the Court does not reach the question of whether the underlying allegations are

sufficient to trigger the intentional acts exclusion because they allege harm "expected or intended from the standpoint of the insured." Dkt. No. 14 Ex. 1 at 209.

*B. Duty to Indemnify*

Unlike the duty to defend, the duty to indemnify is determined not by the eight corners of the pleadings in the underlying case and the insurance contract but by "the facts actually established in the underlying suit." Trinity Universal Ins. Co. v. Emp'r Mut. Cas. Co., 592 F.3d at 691(5th Cir. 2010). An insurer may therefore have a duty to defend "but, eventually, no duty to indemnify." *Id.*; *see also, e.g.*, D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co., Ltd., 300 S.W.3d 740, 745 (Tex. 2009) ("[t]hese duties are independent, and the existence of one does not necessarily depend on the existence or proof of the other."). The Court has concluded that AAIC has a duty to defend, but a determination of its duty to indemnify would be premature before the facts have been established in the underlying case. *See, e.g.*, Westport Ins. Corp. v. Cotten Schmidt, LLP, 605 F. Supp. 2d 796, 810 (N.D. Tex. 2009); Gore Design Completions, Ltd. v. Hartford Fire Ins. Co., 538 F.3d 365, 368 n.6 (5th Cir. 2008) (quoting ultimately Farmers Tex. County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 84 (Tex. 1997)) (noting that question of duty to defend may be determined before conclusion of underlying case only when "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify").

The parties have recently informed the Court that a partial settlement has been reached in the underlying case. *See* Dkt. No. 24. However, not all of the facts in the underlying case have been established, and the Court will therefore stay this case pending resolution of the underlying dispute in state court.

**IV. Conclusion**

For the foregoing reasons, the Court holds that Defendant American Alternative Insurance Corporation owes Plaintiff East Rio Hondo Water Supply Corporation a duty to defend against the allegations set forth in the First Amended Petition, Dkt. No. 14 Ex. 2, and First Amended Petition in Intervention, *id.* Ex. 3, in *Carl & Janel Parker, plaintiffs, and Carolina S. Ruiz, intervenor, v. East Rio Hondo*

16

*Water Supply Corp.*, filed in the 357th District Court of Cameron County, Texas. No. 2008-08-4655-E (April 6, 2009). The Court **GRANTS** Plaintiff East Rio Hondo Water Supply Corporation's Motion for Partial Summary Judgment. Dkt. No. 16. The Court **DENIES** Defendant American Alternative Insurance Corporation's Motion for Summary Judgment. Dkt. No. 14.

The Court **ORDERS** this case **STAYED** pending the resolution of the underlying suit. The Court further **ORDERS** the parties to inform the Court within seven days of the resolution of the underlying case and to confer and file a Joint Status Report on or before November 1, 2010, if the underlying case has not been resolved by that date. The Court further **ORDERS** the remaining deadlines and settings, including the setting for Docket Call and Final Pretrial Conference, **CANCELLED**.

DONE at Brownsville, Texas, on August 30, 2010.

_____
Hilda G. Tagle
United States District Judge